UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EDWARD S. FOURAKER,

                                              Case No. 5:15cv138-MP-CJK

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to

28 U.S.C. § 636(b) and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A),

72.2(D), and 72.3, relating to review of administrative determinations under the

Social Security Act ("Act").  The case is now before the court pursuant to 42 U.S.C.

§ 405(g) for review of a final determination of the Commissioner of Social Security

("Commissioner") denying claimant's applications for disability insurance benefits

("DIB") under Title II of the Act, 42 U.S.C. §§ 401-34, and supplemental security

income ("SSI") under Title XVI, 42 U.S.C. §§ 1381-83.

       Upon review of the record before the court, the undersigned concludes the

findings of fact and determinations of the Commissioner are supported by substantial

evidence. The Decision of the Commissioner, therefore, should be affirmed and plaintiff's applications for DIB and SSI denied.

## ISSUES ON REVIEW

Mr. Fouraker, who will be referred to as claimant, plaintiff, or by name, raises two issues on appeal.  He claims: (1) the administrative law judge ("ALJ") erred in rejecting the opinion of treating psychiatrist Rajni Patel, M.D.; and (2) the ALJ erred in finding Mr. Fouraker not credible.  (Doc. 16, p. 2).

## PROCEDURAL HISTORY

On May 25, 2012, Mr. Fouraker filed applications for DIB and SSI, alleging disability beginning on February 24, 2012. T. 224-31.  The applications were denied initially and upon reconsideration.  T. 120-21, 150-51.  Mr. Fouraker appeared before the ALJ for a hearing on March 11, 2014. T. 37.  On July 24, 2014, the ALJ issued a decision denying claimant's applications for DIB and SSI.  T. 15-31.  The Appeals Council denied claimant's request for further review; as a result, the ALJ's decision became the final determination of the Commissioner.  T. 3-9.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relevant to the issues raised in this appeal:

- "Claimant meets the insured status requirements of the Social Security Act through June 20, 2015."  T. 17.

- "Claimant has not engaged in substantial gainful activity since February 24, 2012, the alleged onset date." T. 17.

- "Claimant has the following severe impairments: degenerative disc disease of the cervical spine; left shoulder bursitis; depression and anxiety (20 CFR 404.1520(c) and 416.920(c))." T. 17.

- "Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." T. 17.

- "Claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [claimant] can lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand for a total of 6 hours in an 8-hour day; and sit for a total of 6 hours in an 8-hour day. [Claimant] is limited to simple, routine, repetitive tasks. [Claimant] should have only occasional interaction with the general public, coworkers and supervisors. Overhead reaching with the left arm is limited to occasional, but claimant can perform no overheard lifting. Reaching in all other directions with the left non-dominant arm is limited to frequent. [Claimant] should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and ventilation." T. 19.

- "Claimant is unable to perform any past relevant work." T. 29.

- "Claimant was born on January 7, 1982 and was 30 years old, which is defined as a younger individual, age 18-49." T. 29.

- "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." T. 30.

- "Claimant has not been under a disability, as defined in the Social Security Act, from February 24, 2012, through the date of this decision." T. 31.

STANDARD OF REVIEW

A federal court reviews the "Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). "Substantial evidence is something 'more than a mere

scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)). A reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has

been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985).[1]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the Commissioner analyzes a disability claim in five steps:

1.   If the claimant is performing substantial gainful activity, he is not disabled.

2.   If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

---

[1] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from performing his past relevant work, he is not disabled.[2]

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, he is not disabled.

Step five (or step four in cases where the ALJ decides a claimant can perform past work) is generally where the rubber meets the road.  At that point, the ALJ formulates the all-important residual functional capacity.  The ALJ establishes residual functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence; and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used

---

[2] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

by the ALJ to make the ultimate vocational determination required by step five.[3]

"[R]esidual functional capacity is the most [a claimant] can still do despite [claimant's] limitations.[4]  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

---

[3] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20. C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[4] In addition to this rather terse definition of residual function capacity, the Regulations describe how the Commissioner makes the assessment:

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 416.912(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 416.912(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.   (See § 416.913.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends or other persons.  (See paragraph (e) of this section and § 416.929.)[.]

20 C.F.R. § 416.945(a)(3).

Case No. 5:15cv138-MP-CJK

## FACT BACKGROUND AND MEDICAL HISTORY[5]

Mr. Fouraker was born on January 7, 1982, making him less than fifty years old at the time of the ALJ's decision. T. 92. Claimant worked as a production technician, assembling air conditioning units, until he was let go on or around September 1, 2010. T. 43, 225. Prior to his work as a production technician, claimant worked for several years as a waiter. T. 225. He returned to his waiting career for a brief period shortly after he lost his production technician position. T. 48-49. At the hearing, claimant testified he was terminated from his position as a production technician due to missing days of work, which he claims was due to pain. T. 43. In his application, however, Mr. Fouraker claims he stopped working as a result of his physical and mental conditions, the birth of his son, and his employer's denial of his request to return to work part-time. T. 255.

In 2011, Mr. Fouraker received unemployment benefits for all four quarters. T. 233. Although claimant quit working in September 2010, his alleged onset date is February 24, 2012. T. 255. Claimant testified his onset date was the date his older brother passed away, which caused him much grief, depression, and anxiety. T. 63.

---

[5] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

As for his physical capabilities, Mr. Fouraker claims his physical and mental conditions make it very difficult for him to perform daily tasks such as household chores. T. 281-88. According to claimant, the combination of his chronic neck pain, anxiety, and depression make it so that he is "unable to perform the necessary tasks to maintain employment." T. 281. Claimant states he requires ten hours of sleep a night, does not participate in any activities during the day other than occasional doctors' appointments and Alcoholics Anonymous ("AA") meetings, relies on frozen or canned food for meals, and does not bathe or shave every day. T. 282.

MENTAL IMPAIRMENTS

Rajni Patel, M.D., was Mr. Fouraker's psychiatrist for more than twelve years. T. 520. Dr. Patel's notes indicate Mr. Fouraker suffered from General Anxiety Disorder since 2004 and Depression since at least the beginning of 2012. T. 519. Treatment records indicate Dr. Patel prescribed Ambien, Klonopin, Luvox, Xanax, Elavil, and Trazodone for several of Mr. Fouraker's symptoms, including irregular sleep problems, depression, and mild to severe anxiety. T. 512-19. Mr. Fouraker reported improvement with these medications. T. 512-19.

In February 2012, Dr. Patel completed evaluations for Listing 12.06 (Anxiety Related Disorders) and Listing 12.04 (Affective Disorders). The evaluations indicate Mr. Fouraker had generalized persistent anxiety with "Motor Tension," "Autonomic Hyperactivity," and "Apprehensive Expectation." T. 504. In the 12.06

evaluation, Dr. Patel concluded Mr. Fouraker's symptoms of anxiety disorder resulted in a marked[6] restriction of activities of daily living, marked repeated episodes of decompensation, and moderate[7] restriction functioning socially and concentrating.  T. 505.  In the 12.04 evaluation regarding affective disorders, Dr. Patel concluded Mr. Fouraker had only mild to moderate limitations on daily living, functioning socially, concentrating, and repeated episodes of decompensation.  T. 508.

On August 8, 2012, Cara Wheeler, Pys.D., saw Mr. Fouraker for a consultative evaluation ordered by the Commissioner.  T. 464-86.  Dr. Wheeler diagnosed Major Depressive Disorder, Recurrent, Severe; Generalized Anxiety Disorder; and Panic Disorder without Agoraphobia; she assigned a Global Assessment Function (GAF) of 50.[8]  T. 467.  Additionally, in the fall of 2012, two non-examining psychologists, Anne-Marie Berick, Ph.D., and Michelle Butler, Pys.D., reviewed Mr. Fouraker's medical records and determined Mr. Fouraker's

---

[6] "Marked" is defined on the evaluation form as "serious limitation in this area. There is a substantial loss in the ability to effectively function."

[7] "Moderate" is defined on the evaluation form as "more than a slight limitation in this area but the individual is still able to function satisfactorily."

[8] A GAF between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  However, the most recent edition of the Diagnostic and Statistical Manual no longer recommends use of the GAF scale, acknowledging "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

limitations were moderate and he could perform routine tasks with normal to frequent supervision but no more than occasional interaction with the public.  T. 101-03, 128-33.

In April 2014, Julian Salinas, Ph.D., evaluated Mr. Fouraker and reviewed Dr. Wheeler's examination report.  T. 532-41.  Dr. Salinas diagnosed Major Depressive Disorder, Recurrent, Moderate; Panic Disorder with Agoraphobia; Generalized Anxiety Disorder; Alcohol Dependence, Sustained Full Remission (Provisional); and Personality Disorder, Not Otherwise Specified, with Avoidant Features.  T. 541. Dr. Salinas found Mr. Fouraker would have moderate limitation on his ability to interact with the public, supervisors, and co-workers; moderate limitation on his ability to respond appropriately to usual work situations and to changes in a routine work setting; and moderate limitation on the ability to remember, carry out, and make judgments in complex work tasks.  T. 533.  Dr. Salinas also characterized Mr. Fouaker as having mild limitation on the ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions.  T. 532.

## PHYSICAL IMPAIRMENTS

In 2009, Cory R. Gaiser, D.O., diagnosed Mr. Fouraker with mild cervical spondylosis after conducting Magnetic Resonance Imaging (MRI), which showed an "unremarkable" appearance of Mr. Fouraker's cervical spine.  T. 380.  Dr. Gaiser

prescribed Mobic, Lortab, and Amrex. T. 378. Mr. Fouraker's visits with Dr. Gaiser ended abruptly in September 2009 after Mr. Fouraker exhibited extremely agitated behavior when Dr. Gaiser's staff refused to backdate paperwork to allow Mr. Fouraker intermittent time off work. T. 376.

Between March 2010 and October 2011, Mr. Fouraker saw Ata Ul Mohsin, M.D., at Consult Care Pain Medicine, sixteen times for management of chronic neck and right shoulder pain. T. 438. Dr. Mohsin prescribed Balcofen, Hydrocodone, and Naprosyn. T. 438. Mr. Fouraker's pain score varied from 2/10 to 6/10 throughout the duration of his visits with Consult Care Pain Medicine. T. 438.

After Mr. Fouraker filed applications for DIB and SSI, the Commissioner ordered a consultative examination by Asim Khattack, M.D. T. 459-63. Dr. Khattack's examination in August 2012 noted "[Mr. Fouraker] has mild limitation in range of motion of his right shoulder and lumbar spine;" Dr. Khattack further found Mr. Fouraker suffered from significant issues with anxiety and depression. T. 460. Non-examining physician Lionel Henry, M.D., also examined Mr. Fouraker in August 2012 and determined Mr. Fouraker could perform medium exertional activity. T. 130-31.

After Mr. Fouraker's release from incarceration in June 2013, he visited Michael McCormick, M.D., for treatment of his cervical spine and shoulder pain. T. 46, 482-85. Dr. McCormick concluded Mr. Fouraker suffered from anterior

instability of the left shoulder with persistent and worsening symptoms that interfered with activities of daily living.   T. 484.   Dr. McCormick diagnosed radiculitis and spinal stenosis of the cervical spine, prescribed Celebrex, and instructed Mr. Fouraker to limit his activities for several weeks.  T. 484.

A few months later, Mr. Fouraker visited Margaret Thirston, M.D., for pain management after being referred by Dr. McCormick.   T. 500.   Dr. Thirston determined Mr. Fouraker suffered from tender left cervical muscles, painful cervical spine range of motion, and positive Spurling's test[9] on the left.  T. 502.  Dr. Thirston prescribed Tramadol and Robaxin and performed facet cervical injections for pain treatment.  T. 487-502.  Mr. Fouraker reported inconsistent levels of pain and pain relief with these treatments.  T. 487-502.

In March 2014, Mr. Fouraker visited Panama City Spine for evaluation of neck pain.  T. 528.  Michael X. Rohan, Jr., M.D., diagnosed inadequately controlled cervical spondylosis and recommended an Anterior Cervical Decompression Fusion procedure.  T. 527-28.  After consultation, however, Dr. Rohan and Mr. Fouraker agreed on observation rather than surgery.  T. 527-28.

---

[9] A Spurling's test is an evaluation for cervical nerve root impingement in which the patient extends the neck and rotates and laterally bends the head toward the symptomatic side; an axial compression force is then applied by the examiner through the top of the patient's head; the test is considered positive when the maneuver elicits the typical radicular arm pain. *Spurling Test*, Farlex Partner Medical Dictionary (July 22, 2016), available at http://medical-dictionary.thefreedictionary.com/Spurling+test.

A few months later, C.W. Koulisis, M.D., performed a consultative examination ordered by the Commissioner. T. 550. After completing the evaluation, Dr. Koulisis diagnosed mild degenerative cervical disk disease, neurologically intact with maintained range of motion; no functional limitations were noted. T. 550-55.

ANALYSIS

Mr. Fouraker claims: (1) the ALJ erred by not giving controlling weight to the opinion of a treating psychiatrist, Dr. Patel; and (2) the ALJ's credibility determination is not supported by substantial evidence. (Doc. 16, p. 22, 29).

Treating Physician

Claimant first asserts the ALJ erred by discounting the opinion of a treating psychiatrist, Dr. Patel. (Doc. 16, p. 22-29). The opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner unless the Commissioner has good cause to not accord considerable or substantial weight. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records.  *Phillips*, 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (*citing* cases).

The ALJ must give a treating physician's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  20 C.F.R. §§ 404. 1527(d)(2), 416.927(c)(2).  Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) its inconsistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion.  20. C.F.R. §§ 404.1527(d), 416.927(c)(2).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons."  *Phillips*, 357 F.3d at 1241.  Failure to do so is reversible error.  *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d

1050, 1053 (11th Cir. 1986)); *see also Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006).

Here, the ALJ did not give controlling weight to all of Dr. Patel's opinions. T. 27.  The ALJ gave substantial weight to Dr. Patel's opinion claimant had moderate limitations in social ability and performing skilled work because the evidence supports this opinion. T. 27.  Specifically, Dr. Patel's opinion regarding limitations in social ability and work performance is supported by the reports of Dr. Salinas and Dr. Wheeler, Dr. Patel's progress notes, and the ALJ hearing, at which claimant testified he suffered from panic attacks that interfered with his ability to perform his job as a production technician.  T. 68.  Claimant also testified working at the factory was socially intimidating because of the number of employees.  T. 68.

The ALJ gave little weight to Dr. Patel's opinion claimant had marked limitations on activities of daily living, noting such finding is contrary to Dr. Patel's own notes as well as the testimony of consultative examiners Dr. Salinas and Dr. Wheeler.  T. 27, 464-68, 504-25, 530-41.  Both Dr. Wheeler and Dr. Salinas's reports reflect Mr. Fouraker suffered from depression and generalized anxiety but was able to care for basic needs and suffered only moderate limitations on daily activities and social interactions.  T. 465, 533.[10]  The ALJ gave Dr. Salinas' opinion substantial

---

[10] Dr. Wheeler also concluded Mr. Fouraker had a GAF score of 50.  As the ALJ notes, however, Dr. Wheeler's GAF assessment was made during a time in which claimant was suffering

weight because Dr. Salinas was an agency examining psychologist whose opinion, unlike that of Dr. Patel, was supported by clinical observations, examinations, and testing. T. 532-41.

Dr. Patel's opinions concerning marked limitations on social interaction and daily activities and repeated episodes of decompensation also were conclusory.  T. 504-11.  The opinions were expressed on check-off questionnaire forms and a letter submitted to the ALJ.  T. 504-11, 525.  Dr. Patel did not cite to any medical evidence, or even his own office notes, to support the answers to the questions on the "check-off forms" or the statements in the letter. *See Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and [the doctor's] previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the [form] was entitled to 'little evidentiary weight.').[11]  Dr. Patel provided only a brief elaboration on the first form

---

from depression due to the loss of his brother and separation from his wife and thus is not reflective of his typical mental state.  T. 28.

[11] The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form.  Such opinion evidence will not bind the Commissioner.  Indeed, courts have found such preprinted forms do not provide persuasive evidence of the validity of opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRL, 20009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 756 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole."  *O'Leary v. Scheweiker*, 710 F.2d 1334, 1341 (8th Cir. 1983).

as to why Mr. Fouraker was disabled by his impairments, simply listing Mr. Fouraker's impairments and stating "psychologically, in my clinical opinion he is unequivocally disabled." T. 506. Although Dr. Patel's treatment notes indicate claimant suffered from depression and generalized anxiety, they also indicate that, with treatment, Mr. Fouraker had a euthymic mood, mild anxiety, and continued to attend AA meetings. T. 512-19, 594-625.

The ALJ gave no weight to Dr. Patel's finding claimant suffered from repeated episodes of decompensation, reasoning that it, too, is unsupported by the evidence. T. 27, 504-25. Dr. Patel's notes do not indicate any signs of decompensation, nor do claimant's medical records demonstrate episodes that meet the criteria required under Listing 12.00.[12] T. 512-19. The ALJ also gave no weight to Dr. Patel's opinion claimant would be unable to handle the stress of any job "because the ultimate determination of disability is an issue reserved to the Commissioner of Social Security." T. 27 (*citing* 20. C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p). The ALJ further noted that Dr. Patel had no history with Social Security disability claims and was unfamiliar with the definitions and rating scales used by the Social Security Administration, which rendered his assessment even less persuasive. T. 27.

---

[12] Repeated episodes of decompensation is defined in Listing 12.00 as three episodes within one year, or an average of once every four months of an extended duration, meaning each episode lasts for at least two weeks. 20 C.F.R. Part 404, Subpart P, Appendix 1.

Case No. 5:15cv138-MP-CJK

In short, the ALJ carefully reviewed Mr. Fouraker's application and Dr. Patel's opinions. Her decision to give no controlling weight to Dr. Patel's opinions is supported by substantial evidence in the record and application of proper legal standards.

CREDIBILITY DETERMINATION

Next, Mr. Fouraker takes issue with the ALJ's assessment of credibility. (Doc. 16, p. 31). With regard to credibility, the ALJ stated as follows.

> "Inconsistent reports and testimony from the claimant and the fact that the record contains observations of generally stable examination findings, noted improvement when compliant with medical instruction, no significant change in his condition outside of subjective reports, detract from the credibility of the claimant's statements as to his functional limitations and the severity of his alleged symptoms."

T. 28. Mr. Fouraker does not say the ALJ did not apply proper legal standards; instead, he objects to the ALJ's credibility finding as "unsupported by the evidence of the record." (Doc. 16, p. 29). Mr. Fouraker claims the medical records show his symptoms did not improve with treatment. (Doc. 16, p. 31). Contrary to plaintiff's assertion, however, the medical records show a pattern of improvement with medication and treatment and a maintained generally stable condition.

The record also shows inconsistency in complaints of pain and improvement. For example, claimant contends that in 2011, shortly before his alleged disability onset date of February 24, 2012, he reported to Dr. Mohsin severe pain with "'a lot of spasm of neck muscles.'" (Doc. 16, p. 31). The medical records, however, show

Mr. Fouraker's complaints of pain were severe to moderate in the beginning of 2011 through the summer of 2011, but by late 2011, claimant reported adequate pain control, increased level of activity, and no medication side effects related to his chronic neck and shoulder pain.  T. 439-45.  Mr. Fouraker's characterization of his symptoms also is inconsistent with the findings of Dr. Khattack, who determined Mr. Fouraker did not have muscle spasms and had normal gait with mild limitations in range of motion in his right shoulder, neck, and lumbar spine.  T. 459-60.

In addition, claimant inconsistently reported pain relief. In October 2013, Mr. Fouraker reported a 90% relief of pain after an injection administered by Dr. Thirston.  T. 490.  After another injection a few weeks later, Mr. Fouraker reported complete relief of pain in his left forearm, little relief of pain in his upper left arm, but no change in pain in his neck.  T. 494.  Mr. Fouraker also rejected certain treatment despite recommendation by physicians.  In March 2014, for instance, Dr. Rohan observed normal gait and muscle strength and diagnosed cervical spondylosis.  T. 527-30.  Dr. Rohan recommended surgery, but he and plaintiff ultimately settled on only observation.  T. 527-30.

Finally, Mr. Fouraker's claims are inconsistent with findings of the second consultative examiner.  This examiner diagnosed mild degenerative cervical disease but reported claimant was in stable condition.  T. 543-55.

With regard to the ALJ's comments on alcohol use, claimant contends the ALJ's finding of inconsistent statements is erroneous when the statements are reviewed in chronological order.  (Doc. 16, p. 30).  Mr. Fouraker claims to have abstained from alcohol with only a few exceptions since 2012, when he had a fourth DUI charge.  T. 66.  Claimant, however, fails to acknowledge that he was not forthcoming to Dr. Patel about his fourth DUI and his alcohol use on three different occasions: once when he reported emotional difficulty but did not report drinking during a phone call to Dr. Patel on July 13, 2012; once during an office visit on August 7, 2012, when he denied drinking; and again when Mr. Fouraker did not mention drinking or the DUI during an office visit on October 30, 2012.  T. 515-18.

In sum, the ALJ carefully reviewed and considered Mr. Fouraker's application, testimony, and medical records, and her credibility determination is supported by substantial evidence in the record.

<u>CONCLUSION</u>

For the reasons set forth above, the undersigned finds the Commissioner's decision supported by substantial evidence and application of the proper legal standards, and therefore, that it should be affirmed.[13]

---

[13] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Case No. 5:15cv138-MP-CJK

Accordingly, it is respectfully RECOMMENDED:

1.    That the decision of the Commissioner be AFFIRMED and plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income DENIED.

2.    That the clerk be directed to close the file.

At Pensacola, Florida this 22nd day of August, 2016.


*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being a served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 5:15cv138-MP-CJK